**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**TIMOTHY DALE PITMAN, JR.** **PLAINTIFF**

**VS.** **No. 4:26-cv-00292 KGB/PSH**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration** **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Timothy Dale Pitmans, Jr. ("Pitman") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Bisignano") to deny his claim for Supplemental Security Income ("SSI") and Disability Insurance

Benefits ("DIB"). Pitman contends the Administrative Law Judge ("ALJ") failed to cite or consider at Step Three of the sequential evaluation whether he met or equaled Listing 11.07 (cerebral palsy).

Bisignano contends substantial evidence supports the ALJ's decision. This statement is correct, and it is recommended that the ALJ's decision be affirmed and the case dismissed.

The parties ably summarized the medical records and the testimony given at the administrative hearing, which was conducted on March 17, 2025. (Tr. 33-61). The ALJ's decision was issued on April 15, 2025. (Tr. 19-28). The Court has carefully reviewed the record to determine whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from November 6, 2023, the alleged onset date, through the date of the ALJ's decision.

The sole claim raised by Pitman is primarily a legal issue. As a result, the administrative hearing and the ALJ's decision excerpts will focus only on the claim of disability due to cerebral palsy.

*The Administrative Hearing:*

Pitman's attorney, in an opening statement, stated his client had been diagnosed with cerebral palsy from birth. Despite the impairment, Pitman had

worked continuously for about twenty years before leaving the job due to intense pain. Counsel stated "I don't often argue a listing" but cited Listing 11.07 as the appropriate listing in the case. (Tr. 37).

Pitman, who was 40 years old at the time of the hearing, was 5'11' and weighed 215. He graduated high school and attended college for a year and a half. Pitman stated he last worked in November 2023, doing heavy work at Delta Transmission for about fourteen years. According to Pitman, his dad was also employed at the same place, and accommodation was made for him at the workplace. He stated his departure from the job was "related to the cerebral palsy." (Tr. 43). Pitman claimed his cerebral palsy had progressively worsened. He was wearing braces on both legs and feet, and stated his pain was 8 on a 1-10 scale.

In addition to cerebral palsy, Pitman stated he dealt with low back and knee pain, high blood pressure, and tingling in his fingers. He also observed he had problems concentrating, keeping on task, and maintaining pace. Pitman testified he used a walker at his employment and a motorized cart when shopping. He stated he lived alone, drove rarely (every three months when he went to the doctor), and received help from his dad with home chores.

Charles Turner, a vocational expert, testified that Pitman could not perform his past relevant work but could perform other work in the national economy.

In a closing statement Pitman's counsel again cited cerebral palsy as disabling.

*The ALJ's Decision*

In his March 15, 2025, decision the ALJ determined Pitman had the following severe impairments: cerebral palsy, patellofemoral syndrome and Osgood-Schlatter's disease, degenerative disc disease of the lumbar spine, and obesity.

The ALJ found Pitman did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ specifically addressed Listings 1.15, 1.16, and 1.18. The ALJ did not specifically cite Listing 11.07 (cerebral palsy).

Cerebral palsy was cited numerous times in the ALJ's summary of Pitman's testimony and the medical evidence. The ALJ observed Pitman's statements about cerebral palsy, his history of cerebral palsy affecting his lower extremities, his statements to medical providers, including his complaint in April 2024 of weakness in his lower extremities due to cerebral palsy, and his diagnosis of mild cerebral palsy affecting his legs as a child. (TR. 24-26).

The ALJ assessed Pitman with the residual functional capacity ("RFC") to perform sedentary work with limitations.[1] Relying upon the testimony of Turner,

---

[1] The limitations were: not climbing ladders, ropes, or scaffolds; only occasionally climbing ramps or stairs, stooping, crouching, kneeling, and crawling; and avoiding exposure to excessive vibration, unprotected heights, and hazardous machinery.

the ALJ found Pitman capable of performing jobs in the national economy. Accordingly, he found Pitman was not disabled. (Tr. 27-28).

*Analysis*

Pitman, citing *Brown v. Colvin*, 825 F.3d 936 (8th Cir. 2016) and *Chunn v. Barnhart*, 397 F.3d 667 (8th Cir. 2005), contends the ALJ's failure to specifically address Listing 11.07 is reversible error. In *Brown,* the plaintiff suffered pronounced hearing loss. Although the ALJ found hearing loss to be a severe impairment he "did not mention Listing 2.10, much less make a determination on the record whether the results of Brown's hearing tests met the criteria for Listing 2.10." 825 F.3d at 940. In *Chunn,* the ALJ found the claimant to have a severe impairment of mild borderline mental retardation. The ALJ did not, however, "mention listing 12.05C, [mental retardation] nor does it otherwise indicate that he considered the listing to be relevant to Chunn's disability claim. His discussion of step three is quite general, saying that he had reviewed the evidence, including findings and opinions of experts, and did not find any evidence to show the existence of an impairment that meets the criteria of the impairments listed in the regulations." 397 F.3d at 671.

Both *Brown* and *Chunn* were reversed and remanded. Pitman reasons that his case should also be remanded due to the ALJ's failure to explicitly mention Listing 11.07. But these cases do not go that far. The ALJ's omission of a specific Listing,

while a *problem*, is not dispositive. The *Brown* decision says as much: “The ALJ's failure to identify and analyze the appropriate listing, although error, may not by itself require reversal so long as the record otherwise supports the ALJ's overall conclusion.” 825 F.3d at 940.

The principle is this – failure to identify a particular listing is not reversible error *per se* but is reversible error if the record does not support the Step Three conclusion reached by the ALJ. It is “preferable” that the ALJ address a specific listing but not reversible error if the overall conclusion supports the conclusion. *Pepper o/b/o Gardner v. Barnhart,* 342 F.3d 853, 855 (8th Cir. 2003). *See also Greer v. Saul*, No. 1:19-CV-00061 PSH, 2020 WL 4587389, at *5 (E.D. Ark. Aug. 10, 2020)(“The Court accepts Greer’s representation that the ALJ should have considered the listing. The ALJ’s failure to do so does not warrant a remand, though, because the record supports his overall conclusion at step three.”).

Based on the guidance in the often-cited *Pepper* case, Pitman bears the burden of demonstrating he met or equaled Listing 11.07. He makes no such showing. The Listing provides:

> 11.07 Cerebral palsy, characterized by A, B, or C:
>
> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or

> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following: 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or 2. Interacting with others (see 11.00G3b(ii)); or 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or 4. Adapting or managing oneself (see 11.00G3b(iv)); or
>
> C. Significant interference in communication due to speech, hearing, or visual deficit (see 11.00E2).

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 11.07.

In his brief, Pitman contends the "medical evidence is highly persuasive" that he met the demands of Listing 11.07A and observes that the state agency experts deemed cerebral palsy a severe impairment. Doc. No. 7, page 13. In his reply brief, he asserts "the medical evidence is strong" that he met the requirements of Listing 11.07A and/or B. Doc. No. 9, page 5. In particular, Pitman cites 11.07B.3 as the Listing which the medical evidence strongly supports.

Pitman is right to comment on the medical evidence, as the decision at Step Three is solely a medical one, *see Cockerham v. Sullivan*, 895 F.2d 492 (8th Cir. 1990), and the claimant bears the burden of showing that his impairment meets or equals a listed impairment. Pitman, however, does not cite *medical evidence* to support his conclusion. For example, Listing 11.07B.3 requires, in part, a claimant to provide medical evidence of marked limitation in concentrating, persisting, and maintaining pace. Without citation to medical evidence, Pitman states he satisfies

this requirement.[2] Pitman's subjective statements at the hearing of problems with concentration, persistence, and pace do not amount to objective medical evidence.[3] The dearth of medical evidence cited by Pitman contrasts with the medical records cited by the ALJ. For example, the ALJ notes a clinical evaluation in November 2023 indicating good movement in Pitman's extremities, and that he was weight-bearing with no assistive device. And the ALJ noted that December 2023 treatment notes showed Pitman's ability to perform tandem gait and walk without an assistive device despite gait problems. The ALJ also observed the findings of a February 2024 consultative examination showing problems with gait, good strength, and no assistive device. (Tr. 25).

In summary, Pitman shoulders the burden of proving he met a listing by offering medical evidence to that effect. The ALJ found cerebral palsy to be a severe impairment, and the ALJ would have been well-served to explicitly cite the Listing for cerebral palsy. However, the record clearly supports the ALJ's conclusion that Pitman did not meet the Listing for cerebral palsy.

---

[2] Pitman also argues, without citation, that a previous determination that he met the childhood listing for cerebral palsy creates a rebuttable presumption, "or even *res judicata*," that he now, years later, meets the adult standard. Doc. No. 9, page 5. The undersigned finds no support for this proposition.

[3] The primary cases cited by Pitman are examples of objective medical evidence in the record suggesting a Listing has been met. In *Smith*, a hearing loss case, there were hearing test results in the record. In *Chunn,* there were IQ test results which amounted to objective medical evidence directly relevant to the Listing for retardation. In neither of these cases was the claimant relying upon subjective statements to show a Listing had been met.

Substantial evidence supports the determinations reached by the ALJ. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

Therefore, it is recommended that the final decision of Bisignano be affirmed and Pitman's complaint be dismissed with prejudice.

IT IS SO ORDERED this 5th day of November, 2026.

UNITED STATES MAGISTRATE JUDGE